# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

PATTI ANN HURT,

    Plaintiff

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security Administration,

    Defendant

Case No.: 3:20-cv-00481-CSD

**Order**

Re: ECF Nos. 17, 18

Before the court is Plaintiff's Motion for Reversal and Remand. (ECF No. 17.) The Acting Commissioner filed a Cross-Motion to Affirm and response to Plaintiff's motion. (ECF Nos. 18, 19.) Plaintiff filed a reply in support of her motion. (ECF No. 20.)

For the reasons set forth below, Plaintiff's motion is granted; the Acting Commissioner's cross-motion is denied; and this matter will be remanded for further administrative proceedings.

## I. BACKGROUND

In March of 2017, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning on December 9, 2011. (Administrative Record (AR) 207-208.) She later amended her alleged onset date to January 1, 2013. (AR 40.) The applications were denied initially and on reconsideration. (AR 116-120, 124-130.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 132-133.) ALJ William Kurlander held a hearing on November 30, 2019. (AR 33-90.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was

also taken from a vocational expert (VE). On December 13, 2019, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-27.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to provide clear and convincing reasons for finding her subjective statements were inconsistent with the evidence in the record; and (2) the residual functional capacity (RFC) assessment is not supported by substantial evidence because the ALJ rejected all medical opinions in the record and crafted limitations that lacked a proper medical foundation.

The Acting Commissioner, on the other hand, argues that the ALJ properly discounted Plaintiff's subjective symptom testimony, and the RFC did not lack proper medical foundation.

## II. LEGAL STANDARD

### A. Five-Step Evaluation of Disability

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) is/are so severe as to preclude the claimant from doing not only his or her previous work but also any other work which exists in the national economy, considering his or her age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough

for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity  and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC,

age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids.[1] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

---

[1] "[The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity from the amended alleged onset date of January 1, 2013, through her date last insured. (AR 17.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: carpal tunnel syndrome, cervical spine disorder, and obstructive sleep apnea. (AR 17.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 18.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except that she would be off task five percent of the time because of reported pain and fatigue; she could occasionally reach overhead; she could occasionally engage in postural activity, but she could not climb ladders, ropes and scaffolds, or crawl; she could occasionally use ramps and stairs; she could engage in no more than frequent fingering; she could not work at exposed heights; and she could work around moving machinery no more than frequently. (AR 18.)

The ALJ then concluded Plaintiff was able to perform her past relevant work as a General Office Clerk (Dictionary of Occupational Titles (DOT) 219.362-010) and Receptionist (DOT 237.367-038). (AR 25.)

At step five, the ALJ determined, in the alternative, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: Marker (DOT 209.587-034), Router (DOT 222.587-038) and Office Helper (DOT 239.567-010). (AR 26-27.) As a result, the ALJ found Plaintiff not disabled at any time from her amended alleged onset date of January 1, 2013, through the date last insured of December 31, 2014. (AR 27.)

**B. Subjective Symptom Testimony**

**1. Standard for Evaluating Subjective Symptom Testimony**

Evaluating a claimant's subjective symptom testimony "becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-7P).[2]

---

[2] SSA previously referred to this as a credibility determination. SSR 96-7P. SSA subsequently eliminated use of the term "credibility." SSA has clarified that "subjective symptom evaluation is

"Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul,* 979 F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.* (citing *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989)).

There is a two-step test for evaluating a claimant's subjective symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted, emphasis original).

An ALJ may consider various factors in evaluating the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c); SSR 16-3P. The ALJ may also consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."

---

not an examination of an individual's character." Instead, the adjudicator considers all of the evidence in evaluating the intensity and persistence of a claimant's symptoms. SSR 16-3P.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotation marks and citation omitted). The ALJ may further consider conduct by the claimant that is inconsistent with the claimant's subjective complaints. *Coleman,* 979 F.3d at 756.

### 2. Plaintiff's Testimony

Plaintiff testified that she had neck surgery in 2011. Her prior work included running a reception desk where she answered phones, received and delivered faxes, and sorted mail. She did a lot of sitting and some walking. When the company was sold, she transitioned to another job in their durable medical equipment field where she would put together lightweight walkers, and was certified in putting on medical compression stockings. She would also run the cash register, take credit cards, and do inventory. She stopped working there because of her spinal issues as she could no longer carry things, and she was numb from the waist up, including in her hands.

She takes ibuprofen and acetaminophen for her pain, but she does not like taking narcotic medication after using it following her neck surgery. She does not use a cane or back brace. She used wrist braces in the past, but stopped using them because they did not help. She bought a walker from a thrift store when she had two broken ankles, but did not use it any longer. She has trouble gripping things due to the numbness in her hands and felt she would not be able to grip a cane well to use it. She did physical therapy exercises for her hands that helped initially, but then she got headaches.

She can sit for 10 to 15 minutes. She can stand for a 15 minutes. Walking causes her a lot of pain. She has trouble sleeping, and difficulty lifting things. She is able to make her own lunch every day, albeit slowly. Her body hurts all over, and she feels like "Gumby."

1    If she were to go back to her past work, it would be difficult to engage in side-to-side

2    movement, to lift 50 pounds or more, to scan in product, and to stand in the warehouses.

3    **3. Analysis**

4    The ALJ found that the claimant's medically determinable impairments could reasonably

5    be expected to cause the alleged symptoms, but determined Plaintiff's statements concerning the

6    intensity, persistence and limiting effect of the symptoms were not entirely consistent with the

7    medical evidence and other evidence in the record. (AR 20.) Therefore, the court must determine

8    whether the ALJ set forth specific, clear and convincing reasons for rejecting Plaintiff's

9    testimony about the severity of her symptoms.

10    **a. Objective Medical Evidence**

11    First, the ALJ concluded that Plaintiff's subjective symptom testimony was inconsistent

12    with the objective medical evidence and other evidence in the record and did not support the

13    level of symptomology Plaintiff alleged. (AR 20.)

14    An ALJ "may not discredit the claimant's subjective complaints *solely* because the

15    objective evidence fails to fully corroborate the degree of pain alleged." *Coleman,* 979 F.3d at

16    756 (emphasis added, citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also*

17    *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2011).

18    The ALJ does not state what specifically is inconsistent between Plaintiff's subjective

19    symptom statements and the objective medical evidence. "'We cannot review whether the ALJ

20    provided specific, clear, and convincing reasons for rejecting [the claimant's] pain testimony

21    where, as here, the ALJ never identified *which* testimony she found not credible, and never

22    explained *which* evidence contradicted that testimony.'" *Lambert v. Saul,* 980 F.3d 1266, 1277

23    (9th Cir. 2020) (emphasis original, quoting *Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir.

2015)). "Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id*. (citation omitted). "But our precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment." *Id*. (citing *Burrell v. Colvin,* 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that we may not 'take a general finding—an unspecified conflict between [c]laimant's testimony … and her reports to doctors—and comb the administrative record to find specific conflicts"); *Brown-Hunter*, 806 F.3d at 493-94; *Vasquez v. Astrue,* 572 F.3d 586, 592 (9th Cir. 2009)). Moreover, "'providing a summary of medical evidence … is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" *Id*. (quoting *Brown-Hunter*, 806 F.3d at 494).

That is exactly what occurred here. The ALJ stated that the alleged intensity, persistence and limiting effects of Plaintiff's symptoms were inconsistent with the objective medical evidence, and then simply summarized portions of the medical record and concluded again that the objective medical evidence did not support the level of symptomology alleged by Plaintiff. (AR 20.)

A review of the objective medical evidence reveals that the ALJ "cherry picked" a few normal examination findings while ignoring the overall diagnostic picture, which is largely consistent with Plaintiff's symptom testimony.[3] The record demonstrates that while Plaintiff had

---

[3] This case is admittedly complicated by the fact that the focus of this action is whether Plaintiff was disabled during her period of insurability: from her amended alleged onset date of January 1, 2013, to her date last insured of December 31, 2014. The ALJ's analysis refers to medical evidence which pre-dates and post-dates her date last insured. That evidence might not be specifically relevant to whether she was in fact disabled during the insurable period, but it is relevant to the ALJ's assessment of Plaintiff's credibility. In this case, it also corroborates her

some initial improvement in her pain following her December 9, 2011, cervical discectomy and fusion with Dr. James Olson, her condition subsequently deteriorated. She continued to have pain, atrophy as well as numbness, decreased and painful range of motion in the cervical and lumbar spine, and decreased sensation to light touch in the upper and lower extremities. She was prescribed narcotic pain medication for a long period of time, and her surgeon believed she would need long term pain management. She had pain over the cervical facets, and tenderness throughout the spine with radiating pain into the paraspinous musculature. She had 3-4/5 strength bilaterally. She tried physical therapy, a TENS unit, and other medications, with no success.

In February of 2015, it was noted that it was difficult to assess the claimant's true weakness because she was able to ambulate and get onto the exam table and up and down from a chair, but she did appear to have significant pain with walking and appeared very uncomfortable. While an initial EMG nerve study done prior to her surgery was normal, a subsequent study revealed bilateral carpal tunnel syndrome with bilateral medial neuropathies in her wrists and chronic C7 radiculopathy in the left upper limb. In June of 2015, Dr. Olson said she could consider a carpal tunnel release, but he believed this would not solve what he believed was a chronic global pain syndrome. (AR 363, 368, 419-22, 426-428, 450-52, 541.)

The ALJ focused on an examination in March of 2018, with Megan King, APRN, at Sweetwater Pain and Spine. The ALJ acknowledged that Plaintiff had severely limited cervical and lumbar flexion and extension, but pointed to findings that Plaintiff had no gross axial skeletal deformities; a negative Lumbar Quadrant test bilaterally; full and pain free joint range of motion without obvious instability or laxity; no radiating pain with lumbar extension; negative

---

claim of a deterioration in her condition following her cervical spine surgery in December of 2011.

12

FABER tests; and an inspection and palpation of the spine and upper and lower extremities was unremarkable. (AR 20.) The ALJ did not mention the examination findings that are consistent with her asserted symptomology: Plaintiff had positive Tinel's sign in the hands; an antalgic gait; 4/5 strength in the upper and lower extremities bilaterally; and decreased light touch sensation in the upper extremities. (AR 544-545.)

In sum, the ALJ's finding that Plaintiff's subjective symptoms were inconsistent with the objective medical evidence is not supported by substantial evidence. Therefore, this is not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### b. Walker & Cane

Second, the ALJ said Plaintiff testified that she had a walker at home that she had used a year prior, and that she should use a cane, but does not; however, the medical record showed little to no support for a prescription for an assistive device. Thus, the ALJ rejected the assertion that an assistive device was required for ambulation. (AR 20-21.)

Plaintiff is correct that she did not testify that an assistive device was required for ambulation. She testified that she recently had purchased a walker at a thrift store after she suffered an injury to both of her ankles. She did not testify that she bought or tried to use the walker for her spinal issues. The ALJ is correct that there is no prescription for an assistive device in the record; however, Plaintiff did not testify that anyone had prescribed an assistive device or that a cane was *required*. Instead, she said *she thought* she should probably use a cane, but she felt she would have difficulty gripping it. While there is no prescription for an assistive device, a record from February 10, 2015 (less than two months after the date last insured), noted that Plaintiff appeared in significant pain with walking, and it was difficult to assess her ability to

1  toe walk, heel walk and repetitively raise her toes due to loss of balance and significant pain.

2  (AR 456.)

3      The court finds that this is not a clear and convincing reason for rejecting Plaintiff's

4  testimony.

5                      **c. ALJ's Personal Observations**

6      Third, the ALJ said that Plaintiff's subjective symptom statements were inconsistent with

7  the ALJ's personal observations of the claimant. Plaintiff testified that she could not feel/had

8  numbness in her hands, but the ALJ pointed out that she was able to pick up a pen and sign her

9  name at the hearing.

10     "The ALJ's observations of a claimant's functioning may not form the sole basis for

11 discrediting a person's testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (citing SSR

12 96-7p at 8). "Instead, an ALJ's personal observations may be used only in 'the overall evaluation

13 of the credibility of the individual's statements.'" *Id.*

14     In *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017), the ALJ discredited the claimant's

15 testimony that she had a weak grip and numbness in her fingers because an examining

16 psychologist had noted that the claimant had a normal pencil grip during the examination.

17 *Trevizo*, 871 F.3d at 680. The Ninth Circuit said that this "signals only that [the claimant] held a

18 pencil in a normal manner and not that there were no limitations to her gripping strength or fine

19 or gross manipulation abilities, which [the psychologist] would have been in no position to

20 assess." *Id*. The court concluded there was "no basis, much less a 'clear and convincing one,' for

21 crediting the opinion of an examining psychologist with respect to [the claimant's] grip over that

22 of [the] primary treating physician and [the claimant's] own testimony." *Id*.

23

14

Here, the ALJ's observation that Plaintiff could pick up a pen for the few seconds required to affix her signature to a piece of paper does not translate to a conclusion that she did not experience numbness or overall difficulty gripping things. The ALJ acknowledged that Plaintiff's EMG showed she had bilateral median neuropathies of both wrists as well as superimposed chronic C7 radiculopathy in the left upper limb. (AR 541.) Moreover, Plaintiff consistently complained of bilateral upper extremity radiculopathy symptoms and paresthesia in her upper extremities and fingers. (AR 465, 473, 494, 505.)

Therefore, the court does not find this is a clear and convincing reason for rejecting Plaintiff's testimony about her numbness and gripping ability.

### d. Prescribed Treatment

Finally, the ALJ concluded that Plaintiff's failure to follow prescribed treatment that might improve her symptoms is inconsistent with her subjective symptom statements. The ALJ said that on March 13, 2012, the orthopedic provider recommended that Plaintiff attend physical therapy twice a week for six weeks. The ALJ indicated that Plaintiff did not comply because she was going through a personal tragedy, and on October 22, 2012, and on May 9, 2013, she was noted as having no contact with the physical therapy facility. The ALJ also noted that Plaintiff was referred to pain management on two occasions. Plaintiff reported she fired the first referred specialist due to a disagreement with the plan of care, and she did not follow up with the second referral. The ALJ concluded that Plaintiff did not offer a sufficient explanation for not complying with the prescribed treatment. (AR 21.)

"A claimant's subjective symptom testimony may be undermined by an 'unexplained, or inadequately explained, failure to … follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the

ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Trevizo v. Berryhill,* 871 F.3d 664, 679-80 (9th Cir. 2017) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

Regarding Plaintiff attending physical therapy, there is a notation that she was initially not able to come to physical therapy right after her surgery due to personal tragedy. Other records indicate that the personal tragedy was that her husband committed suicide, which would certainly qualify as a sufficient reason for not attending physical therapy at that time. (AR 427, 378, 380, 460.) She subsequently attended physical therapy, though she did miss some sessions. (AR 329-323, 343-358.) She did report that the physical therapy caused her to have severe headaches, exacerbated her symptoms, and that she did not have a good experience. (AR 420, 541.)

The ALJ did not take into account these explanations for not attending physical therapy. Therefore, this is not a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's subjective symptom statements.

Regarding the referrals to the pain management specialists, the record does contain an explanation as to why Plaintiff stopped going to the first pain management specialist, Denis G. Patterson, DO. Dr. Patterson's treatment notes state that Plaintiff expressed she was unhappy with him and his staff. His records say that she demanded that Dr. Patterson start her on Percocet at eight times a day, and he told her that his policy would not allow him to do that because he did not think it was medically appropriate. She decided she wanted to pursue care elsewhere. (AR 364.) Plaintiff, on the other hand, reported to Dr. Olson's office that she thought

16

Dr. Patterson was arrogant and did not listen to her. (AR 424.) The ALJ did not discuss Plaintiff's explanation for terminating her care with Dr. Patterson other than to briefly mention that she fired him.

At an October 16, 2012 appointment, after describing the issues she had with Dr. Patterson, Dr. Olson referred her to Dr. Wesley or Dr. Berman for pain management. (AR 489.) Her other treating provider, Dr. Rafael, also referred her to Dr. Berman for evaluation of chronic pain on December 20, 2012. (AR 474.) There is a note from Dr. Rafael in September of 2015 that states Plaintiff reported she fired Dr. Berman, though there is no explanation provided, nor are there any treatment records from Dr. Berman. (AR 465.) Dr. Rafael gave her another referral to Dr. DeMourdaunt. (AR 465.) At that time, she had discontinued taking Percocet and Norco for pain. (AR 461.)

Dr. Rafael's note from March of 2016, states that Plaintiff had weaned herself off of hydrocodone, upon which she had been dependent for two years. Dr. Rafael explained that Plaintiff had seen physicians for treatment of chronic pain, but she declined to return due to her concern for treatment with oxycodone. (AR 461.)

The ALJ did not discuss Plaintiff's apparent firing of Dr. Berman, or her decision not to return to a pain management provider due to concerns over being treated with oxycodone, on which she had previously been dependent. In addition, Plaintiff did eventually return for chronic pain treatment at Sweetwater Pain and Spine.

The court finds the ALJ did not address Plaintiff's reasons for not continuing treatment with a pain management provider; therefore, this does not constitute a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony.

### 4. Conclusion on Subjective Symptom Testimony

The Acting Commissioner argues that the ALJ found Plaintiff's allegations were "not entirely consistent" with the medical and other evidence, and so did not *completely* reject her testimony. The problem with that argument is the ALJ did not specify what portion of her testimony he was rejecting and what portion he was crediting.

In conclusion, the court finds the ALJ did not set forth specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Remand is appropriate for the ALJ to properly consider Plaintiff's subjective symptom testimony in assessing her RFC.

## C. RFC

Plaintiff argues that the ALJ rejected all of the medical opinions, and as a result, there was no support from a medical source for the ALJ's conclusion that Plaintiff was capable of light work with specified off task, postural and manipulative limitations. Instead, Plaintiff contends the RFC assessment is nothing more than the ALJ's own lay medical opinion, and the ALJ did not explain how he arrived at Plaintiff's RFC.

The Acting Commissioner, on the other hand, argues that it is clearly the province of the ALJ to determine RFC.

The State medical reviewing consultants determined initially and on reconsideration that there was insufficient evidence for a functional analysis from the alleged onset date through the date last insured. (AR 110-111.) Dr. Roger Fast said that if her date last insured was not so far in the past, he would recommend trying to get a treater "MSS" (medical source statement), since her primary limitations are due to pain. He also determined that from an "objective standpoint she was capable of working," but at the same time said, "[a]t this point we have insufficient evidence." (AR 111.) The ALJ gave this opinion little weight. (AR 23.)

1    The ALJ also gave little weight to the opinions of Plaintiff's treating physicians,

2  Dr. Olson and Dr. Rafael. (AR 24-25.)

3    The regulations provide that the ALJ must assess all the evidence, including

4  the claimant's and others' descriptions of the limitations, and medical reports, to determine what

5  capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3)

6  and  416.945(a)(3). "[T]he ALJ is responsible for translating and incorporating clinical findings

7  into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)

8  (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

9    While the ALJ is responsible for determining the RFC, the RFC must be supported by

10  substantial evidence. "The ALJ must set out in the record his reasoning and the evidentiary

11  support for his interpretation of the medical evidence." *Tackett v. Apfel,* 180 F.3d 1094, 1102

12  (9th Cir. 1999) (citation omitted). Moreover, "the ALJ must use 'some medical evidence of the

13  claimant's ability to function in the workplace' in order to make a proper RFC assessment; '[t]he

14  ALJ may not simply draw his own inferences about [the claimant's] functional ability from

15  medical reports.'" *Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021) (quoting *Combs v.*

16  *Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017), and citing *Hutsell v. Massanari,* 259 F.3d 707, 712

17  (8th Cir. 2001)); *see also* POMS § DI 24510.001(A)(1) ("The RFC assessment: is based

18  primarily on medical evidence").

19    Courts have held that when al ALJ rejects the expert opinions in the record and instead

20  relies on his own judgment in determining a claimant's RFC, the ALJ's decision is unsupported

21  by substantial evidence. *See Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 293 (1st

22  Cir. 1986); *Jakubiak v. Berryhill*, 337 F.Supp.3d 80 (D. Mass. 2018); *Maniscalo v. Colvin,* 167

23

F.Supp.3d 207, 217-18 (D. Mass. Mar. 3, 2016); *Beyene v. Astrue*, 739 F.Supp.2d 77, 83 (D. Mass. 2010).

Generally, a lay person is not qualified to interpret raw medical data to determine a claimant's RFC unless the impairments are so mild that they pose no significant functional limitations. *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 17 (1st Cir. 1996); *Rosado*, 807 F.2d at 293-94; *Jakubiak,* 337 F.Supp.3d at 85 (citation omitted); *Maniscalo*, 167 F.Supp.3d at 218-19; *Beyene*, 739 F.Supp.2d at 83 (citation omitted).

Here, the ALJ rejected all of the expert opinions in the record. The ALJ summarized the medical evidence regarding Plaintiff's carpal tunnel syndrome and cervical spine disorder and stated that it supported the RFC assessment, without providing any explanation for his determination that Plaintiff would be off task five percent of the time or regarding her postural and manipulative limitations. (AR 18, 21-23.) In rejecting all of the medical opinion evidence, the ALJ apparently relied only on the Plaintiff's medical records and possibly Plaintiff's own testimony in assessing the RFC. When the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities…[the] bare medical findings are unintelligible to a lay person in terms of residual functional capacity." *Rosado,* 807 F.2d 293.

Plaintiff's impairments were not so mild that they did not pose any significant functional limitations, and it was improper for the ALJ to draw his own conclusions regarding Plaintiff's RFC without the support of an expert medical assessment. Therefore, the ALJ's RFC assessment ins unsupported by substantial evidence, and this must be remanded to obtain further functional evidence.

**D. Remand**

This matter will be remanded for further administrative proceedings to consider Plaintiff's subjective symptom testimony and further develop the record to determine Plaintiff's RFC.

### IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 17) is **GRANTED**;

The Acting Commissioner's cross-motion (ECF No. 18) is **DENIED**;

This matter is **REMANDED** for further proceedings consistent with this Order; and

The Clerk shall enter **JUDGMENT** accordingly.

**IT IS HEREBY ORDERED.**

Dated: February 14, 2022

_____
Craig S. Denney
United States Magistrate Judge